Valley Railroad Co. *v.* Delaware, Lackawanna &
Western Railroad Co., Appellant.

Argued January 26, 1943. Before MAXEY, C. J.;
DREW, LINN, PATTERSON, PARKER and STEARNE, JJ.

*Reese H. Harris,* of *O'Malley, Hill, Harris & Harris,*
with him *Gomer W. Morgan,* for appellant.

*Morris Wolf,* with him *J. Julius Levy, Wolf, Block,
Schorr & Solis-Cohen,* and *Sullivan, Donovan & Heene-
han,* for appellee.

OPINION BY MR. JUSTICE LINN, March 22, 1943:

Defendant, here called Lackawanna, appeals from an order in favor of plaintiff, here called Valley, in a declaratory judgment proceeding.

We take the following facts from the petition. Valley is a corporation created under the laws of New York for the purpose of constructing and operating a railroad in that state. Lackawanna is a Pennsylvania corporation owning and operating a railroad in Pennsylvania and also operating in New York over Valley's road. Valley leased its road and property to Lackawanna by a long term lease made in 1869. Article 4 of the lease provided that Lackawanna ". . . shall pay, as a rental and for the use, possession and occupancy of the said the Valley Railroad, the interest upon whatever bonds may as aforesaid be required to be issued for its construction; and the said [Lackawanna] shall also pay to the holders of the capital stock of the said [Valley], which may be issued as aforesaid to pay for the construction of said railroad, eight [1] per centum per annum, to be paid semiannually, on the first days of January and July in each and every year, free and clear of all taxes, impositions and assessments whatsoever." This rental was payable at Lackawanna's office in New York City.

The 6th and 7th articles provided that Lackawanna ". . . shall, during the continuance of this indenture, pay all taxes and assessments, which may be imposed, levied or assessed on the property of the said the Valley Railroad Company, or on the business done on or with the said railroad, or on the income or profits of said business, or on the said the Valley Railroad Company as a corporation, or any of its rights, privileges or franchises, by the United States, or any state, county, township, municipal or other authority having legal authority to levy taxes, imposts or duties.

---

[1] Reduced to five per cent by a supplement dated September 19. 1881.

"Article 7. That the said the Valley Railroad Company shall, notwithstanding this agreement and lease, continue to maintain their organization as a corporation, and do and perform all acts and things necessary to the maintenance of their corporate rights."

The contract was a New York contract. Lackawanna has made payment to Valley's shareholders at the rate of 8 per cent and, since the modification, at the rate of 5 per cent. Lackawanna, through its nominees, appears to have managed the corporate affairs of Valley. In 1942, Valley shareholders learned that "Valley might have become liable to the United States of America for corporation income and excess profits taxes, which Lackawanna failed to pay, and also that Lackawanna might have caused entries to be made on the books of account of Valley indicating a large indebtedness of Valley to Lackawanna on open account." On inquiry, they found that "Lackawanna had caused to be made in the journal of Valley under date of December 31, 1941," an entry "To accrue Federal Income Tax for the years 1933 to 1941, inclusive, . . ." in amounts totaling $56,-897.51. Petitioner averred that during specified prior years Lackawanna had paid such taxes. Valley's position is that on the facts stated, Lackawanna ". . . is obligated and required to assume and pay all taxes, including federal taxes heretofore and hereafter assessed against Valley during the continuance of the lease . . ."; that Lackawanna denied liability to pay them; that Valley has no funds and, since the lease provides that rental payments be made by Lackawanna direct to Valley's shareholders, it never can be in funds. The petition prayed for a declaratory judgment construing the rights of the parties and that Lackawanna ". . . be ordered to pay to the United States of America forthwith all taxes, including federal income taxes now due and owing to the United States of America by petitioner;" and ". . . to pay when due all future taxes" imposed upon petitioner.

To that petition, Lackawanna filed an answer raising questions of law,[2] asserting that Valley had not set forth a case within the declaratory judgment act and that it appeared ". . . the controversy [was] . . . ripe for relief by way of the usual proceedings in equity . . ." Before the court passed on that issue, Lackawanna also filed a petition under the Act of March 5, 1925, P. L. 23, 12 PS section 672, and obtained a rule to show cause why the petition ". . . should not be dismissed for want of jurisdiction." The case came on for hearing and the court ordered that ". . . the answer raising questions of law is decided in favor of the plaintiff and the defendant is allowed fifteen (15) days to answer to the merits."

First, as to the petition under the Act of March 5, 1925, P. L. 23, 12 PS section 672, challenging jurisdiction; Lackawanna was served and appeared and was therefore subject to the jurisdiction of the court. The common pleas has jurisdiction of petitions for declaratory judgments because the act confers it. The rule to show cause should therefore have been discharged: *Lackawanna Co. v. James*, 296 Pa. 225, 145 A. 817; *Main Cleaners & Dyers, Inc. v. Columbia Super Cleaners, Inc.*, 332 Pa. 71, 2 A. 2d 750. But, to discharge that rule, is not to hold that petitioner is entitled to the desired declaration.

While Lackawanna's answer denied the application of the declaratory judgment act on the ground that there was an available remedy in equity, it also contended, at the argument, that petitioner can sue in assumpsit. In reply, it was suggested that as defendant had limited the objection to the existence of a remedy in equity, it was not open now to suggest that there was also a remedy at law. We reject the contention because it is settled that the court will determine the availability of the declaratory judgment procedure whether the defendant has objected to it or not and even if the defendant has agreed to it: *Stofflet & Tillotson v. Chester Housing Authority*,

---

[2] Act of May 22, 1935, P. L. 228, section 5, 12 PS section 851.

346 Pa. 574, opinion filed this date; *Taylor v. Haverford Twp.,* 299 Pa. 402, 406, 149 A. 639; *Erie City v. Phillips,* 323 Pa. 557, 559, 187 A. 203.

The legal elements of the controversy between the parties appear simple. The lessor contends that the lessee has not paid taxes which it agreed to pay as part of the rent. Whether the words of the promise, quoted above from Article 6, include federal income taxes is not before us for decision. It is, however, certain that one of the lessor's remedies to recover rent is by action of assumpsit and that it is a complete remedy and presently available.

In the argument on behalf of Valley it was said: "Valley could not sue Lackawanna at law to recover the amount of income taxes, *without paying those taxes,* and as is obvious, this situation never could arise because Valley *has no money* and *cannot have any money."* *Ottman v. Albert Company,* 327 Pa. 49, 192 A. 897, was cited to support that proposition; but in that case (p. 59) the parties had agreed that taxes should not be collectible as rent until after lessors had paid them. The contention that Valley has no money, and cannot have any, is unsound. "The fact that by the terms of the leases the rentals are to be paid to the shareholders, rather than to the corporate lessors, can make no difference in the result. The rights of the shareholders are derivative and the income is that of the corporation and can only be paid to them by its authority. Here the income was at all times that of the lessor, though under its contract it was directly distributable to the latter's shareholders." *U. S. v. Warren R. Co.,* 127 F. 2d 134, 138 (C. C. A. 2d, 1942).

If the income taxes are payable as rent, as Valley contends, Lackawanna's failure to pay them would constitute a breach of contract for which Valley may sue at once. The contention that it must first pay the taxes seems based on the proposition that Lackawanna has agreed to indemnify it. We think the promise was to pay

the taxes,[3] not to indemnify; but, if it were, the question would remain, indemnify against what? If the relations can be regarded in that light, the indemnity is against a liability arising the moment the tax becomes due and not against loss: Cf. *Malley v. American Indemnity Co.,* 297 Pa. 216, 146 A. 571; *Ruzyc v. Brown,* 320 Pa. 213, 181 A. 783; *West v. MacMillan,* 301 Pa. 344, 152 A. 104; *Fairfield v. Day,* 71 N. H. 63, 51 A. 263. That liability exists, appears to have been settled by *U. S. v. Joliet & Chicago R. R.,* 315 U. S. 44; *U. S. v. Warren R. Co.,* 127 F. 2d 134 (C. C. A. 2d, 1942).

As there is a present right enforceable by action of assumpsit, the petition should have been dismissed: *Allegheny County v. Equitable Gas Co.,* 321 Pa. 127, 183 A. 916.

The order appealed from is reversed and the petition is dismissed at petitioner's costs.

---

[3] See *Minnesota Loan & Trust Co. v. Medical Arts Bldg. Co.,* 8 F. Supp. 907 (D. C. Minn. 1934); *Richardson v. Gordon,* 188 Mass. 279, 74 N. E. 344; *Trinity Church v. Higgins,* 48 N. Y. 532; *Schmid v. Thorsen,* 89 Ore. 575, 170 Pac. 930.