## Philadelphia Manufacturers Mutual Fire Insurance Company, Appellant, *v.* Rose.

16 

Argued November 14, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

 

*George H. Detweiler*, with him *Robert A. Detweiler*, for appellant.

*Lemuel B. Schofield,* with him *Marvin Comisky* and *W. Bradley Ward,* for appellee.

OPINION BY MR. JUSTICE LINN, January 3, 1950:

This proceeding was brought under the Uniform Declaratory Judgments Act[1] to ascertain the coverage or non-coverage of a fire insurance policy. The appellant-plaintiff, beginning in 1943, annually issued to defendant its policy insuring certain buildings, identified as numbers 18, 19 and 20, on defendant's land devoted to industrial uses. The policy specified the amount of insurance on building number 20 as $100,000. In August, 1946, a fire damaged part of a building on this land; defendant contended that the building damaged was part of number 20 and claimed a loss of $66,627.45. Plaintiff rejected the claim, contending that the damaged property was not part of building number 20 but was part of buildings numbered 21 and 22.

Those rival contentions resulted in plaintiff's petition asking the court to declare "the rights, status, and other legal relations between [plaintiff] and [defendant], for a decree that [defendant] carried no insurance with your petitioner . . . covering Buildings Nos. 21 and 22, more fully in this petition referred to." The defendant, after filing and withdrawing preliminary objections to the petition, answered on the merits, concluding his answer as follows: "Wherefore, the defendant prays . . . for a declaratory judgment under the Uniform Declaratory Judgment Act to the effect that . . . [plaintiff] . . . by its policy of insurance in effect at the time the building [number 20] hereinbefore described was destroyed by fire, did insure and protect said building by its policy of insurance which was in full

---

[1] Approved June 18, 1923, P. L. 840, as amended by Acts of April 25, 1935, P. L. 72, and May 26, 1943, P. L. 645, 12 PS 831 et seq.

force and effect at the time thereof." Defendant stated, in paragraph 4 of his answer, that "defendant joins in the petitioner's request to have this Honorable Court determine the rights under the policy of fire insurance attached to the petition as Exhibit 'A'. It is admitted that this policy was an annual policy effective March 1, 1946. Defendant further admits and joins in the averment in the plaintiff's petition that 'The policy being in writing, its construction is for your Honorable Court, as a matter of law'. In fact it is the defendant's position that this—a question of law—is the only issue before this Court because the policy by its terms clearly covered and protected the building which was destroyed by fire. . . ."

We recognize, of course, that jurisdiction cannot be conferred by the mere agreement of parties: *Valley Railroad Co. v. Delaware, Lackawanna & Western R. Co.*, 346 Pa. 579, 582-3, 31 A. 2d 276 (1943) ; but we refer to the 4th paragraph and to defendant's prayer in his answer as showing defendant's agreement with plaintiff that, to the extent that actual controversy between contending parties is essential, such controversy, within the meaning of the statute, exists.

The case went to trial. The judge who heard the evidence filed what he called an "adjudication," with "findings of fact" and "conclusions of law," and ending with a "decree nisi," [2] sustaining plaintiff's position, declaring that ". . . it is ordered, adjudged and decreed as follows: 1. That Building No. 20 was that part extending from Bleigh Street Northwardly 425 feet by a

---

[2] While not material in this review, it may be noted that the learned judge appears to have regarded the case as one on the equity side of the court; he refers to the hearing as on "Bill and Answer"; and finds defendant to be the owner of the land "described in the bill of complaint in equity." This suit was on the law side and was not brought by a bill in equity.

width of 122 feet to a corrugated iron wall. 2. That defendant's policy of insurance with the Philadelphia Manufacturers Mutual Fire Insurance Company for the period from March 1, 1946, to March 1, 1947, and in force on August 8, 1946, did not cover the buildings or parts thereof damaged or destroyed by fire on August 8, 1946. 3. That the costs of each party to this proceeding be borne by plaintiff and defendant respectively. The Prothonotary will enter a decree nisi in the terms above set forth, and will notify counsel thereof, and of the filing of these findings and conclusions; and further, that if exceptions are not filed thereto within ten days from the receipt of said notice, a decree absolute in the sense of the decree nisi will be entered."

Defendant then filed 31 exceptions to the "findings of fact, conclusions of law, rulings on evidence, disposition of requests for findings of fact and for conclusions of law, and the decree nisi."

The exceptions came on for hearing before the court in banc, which dismissed the proceeding without discussing the exceptions seriatim. This conclusion, as we understand the opinion of the court, was reached by reference to discretion,[3] exercisable in granting relief by declaratory judgment, and by reference to the proposition that a declaratory judgment proceeding "is not an optional substitute for established and available remedies." [4] In general, they thought that "Under the

---

[3] The court referred to *Kariher's Petition (No. 1)*, 284 Pa. 455, 471, 131 A. 265 (1925); *Capital Bank and Trust Co.'s Petition*, 336 Pa. 108, 111, 6 A. 2d 790 (1939); *Schoenbrun v. Nettrour*, 360 Pa. 474, 477, 61 A. 2d 868 (1948).

[4] The court referred to *Gerety Estate*, 349 Pa. 417, 418, 37 A. 2d 792 (1944); *Nesbitt v. Mfrs. Casualty Ins. Co.*, 310 Pa. 374, 380, 165 A. 403 (1933); *Stofflet & Tillotson v. Chester Housing Authority*, 346 Pa. 574, 577, 31 A. 2d 274 (1943); *Allegheny County v. Equitable Gas Co.*, 321 Pa. 127, 183 A. 916 (1936); *Erie City v. Phillips*, 323 Pa. 557, 559-560, 187 A. 203 (1936).

circumstances, it is clear that the parties have an adequate remedy in the action of assumpsit for the final adjudication of their rights."

The court in banc must have reached its conclusion without giving adequate effect to the amendment of May 26, 1943, P. L. 645, 12 PS 836, which, for the future, required essential modification of what this court had said, in cases arising before the amendment became effective. No one familiar with the history[5] of the amendment should be in any doubt of the meaning intended and stated by the legislature. The amendment provides, "Section 6. Discretionary.—Relief by declaratory judgment or decree may be granted in all civil cases where an actual controversy exists between contending parties, or where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable

---

[5] See Borchard: Declaratory Judgments (2nd ed., 1941), p. 321. et seq.; Borchard: Declaratory Judgments in Pennsylvania, 82 U. of Pa. L. Rev. 317 (1934); Borchard: Recent Developments in Declaratory Relief, 10 Temp. L. Q. 233 (1936). In this article the author gives the history of the drafting, etc., of the Amendment of April 25, 1935, P. L. 72.

remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present: . . ."

The parties to this case brought themselves directly within the terms of the amendment: they agree (and the evidence shows the fact) that "an actual controversy exists." The trial judge was "satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding." ·

We do not at this time discuss the findings of fact and conclusions of law made by the trial judge; that is first the duty of the court in banc; we now refer to the suggested decree because the court in banc, without discussing the exceptions, dismissed the proceeding on a misapprehension of the meaning of the amendment of 1943, to which, by the way, we find no reference in the court's opinion.

The record shows, within the terms of the amendment, (1) both parties praying for relief in their "actual controversy" and (2) the trial judge "satisfied" within the statute. Coming to the next sentence of the amendment, ("Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed") we must say that counsel have not referred us to any statute providing a special form of remedy for this type of case and we know of none. The next provision to be noticed is that "the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief

are present." It should be apparent from these provisions in the amendment, that the court in banc erred in setting aside the proceeding on the ground that "the parties have an adequate remedy in the action of assumpsit. . . ."

The legislature, by the amendment of 1943, clearly provided that neither the fact that the defendant might have pursued his "general common law remedy" by suing in assumpsit, nor the fact that plaintiff might have used an "equitable remedy" to reform the policy (nor both facts together) shall, in the words of the amendment, "debar a party [here both parties asking for the same relief] from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present."

The cases referred to above in footnote 3 as cited by the court in banc need not detain us in considering the amendment of 1943, which imposes a different or more restricted measure of discretion than was imposed originally: *Kariher's Petition*, 284 Pa. 455, 131 A. 265 (1925) and *Capital Bank and Trust Co.'s Petition*, 336 Pa. 108, 6 A. 2d 790 (1939), arose and were decided before that amendment. In *Schoenbrun v. Nettrour*, 360 Pa. 474, 61 A. 2d 868 (1948), which was brought after 1943, the petition was dismissed because the elements of a justiciable controversy under the act were not even alleged.

With respect to the cases referred to on the second proposition, that assumpsit or bill to reform the policy constitute other available remedies, it is sufficient to say that the cases cited, *Nesbitt v. Mfrs. Casualty Ins. Co.*, 310 Pa. 374, 165 A. 403 (1933) ; *Stofflet & Tillotson v. Chester Housing Authority*, 346 Pa. 574, 31 A. 2d 274 (1943) ; *Valley Railroad Co. v. Delaware, Lackawanna & Western R. Co.*, 346 Pa. 579, 31 A. 2d 276 (1943) ; *Allegheny County v. Equitable Gas Co.*, 321 Pa. 127, 183 A. 916 (1936), arose before the amendment of 1943. In

*Gerety Estate*, 349 Pa. 417, 419, 37 A. 2d 792 (1944), we applied the provision [6] "Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed." [7] Obviously neither the "general common law remedy" of assumpsit, nor the "equitable remedy" by bill to reform, is within the class "where . . . a statute provides a special form of remedy for a specific type of case." The decision in *Gerety Estate* does not support the order appealed from, quite the contrary.

The purpose of the original draftsman of the amendment of 1935 [8] failed by additions made to his draft during its consideration by the legislature. The amendment of 1943 was obviously an effort to accomplish what had failed in 1935. We must give the amendment its clearly expressed effect where, as here, the parties have brought themselves within its terms.

The use of declaratory judgment procedure in insurance cases to determine coverage is very common as appears by the material collected in Borchard, Declaratory Judgments, supra, chap. 6, pp. 634 to 653. If the declaration takes the form desired by the plaintiff it will of course "terminate the uncertainty or controversy giving rise to the proceeding." If the defendant's view prevails, the declaration may be, in the words of his brief, "that the portion of the structure damaged on August 8, 1946, was covered by the policy of fire insurance then in

[6] This provision was contained in the Amendments of 1935 and 1943, see footnote 1.

[7] This appears on page 419 in which we referred to the exclusive jurisdiction conferred (a) by the Register of Wills Act of 1917, P. L. 415, section 21(a), 20 PS 2005, and (b) by the Orphans' Court Act of 1917, P. L. 363, section 9(e), 20 PS 2245. The reference on page 418 to what had been said prior to the 1943 amendment was not part of or essential to the decision.

[8] See Borchard's account in 10 Temple L. Q. 233, referred to above, footnote 5.

force." In either contingency this controversy will be ended. The proceeding should not be dismissed because in one contingency it may be necessary, either by supplementary proceedings in this case or by independent action, based on what may be adjudicated in this case, to determine the amount of the damage payable. Section 8 of the Act of 1923, P. L. 840, 12 PS 838, provides for supplementary relief "based on a declaratory judgment or decree."

This record suggests brief reference to the new rules, recently effective,[9] relating to briefs to be filed by appellants. This reference is of course not intended as an adverse criticism of appellant's brief in this case but rather to call attention to the reason for amending the rules. The change was made primarily in the interest of litigants to reduce the cost of printing. In this case the "Statement of the Questions Appellant Intends to Argue on the Appeal" consists of 33 numbered paragraphs occupying 7 printed pages. It was obviously pre-

---

[9] On March 23, 1949, effective July 1, 1949, Rule 22 was amended to read as follows: "Not later than 60 days before the return day of the certiorari if it be returnable 3 months or more after the date of its issuance, and in all other cases not later than 30 days before the return day, unless an extension of time be granted by this court for cause shown, appellant shall file in the court below a statement of the questions he intends to argue on the appeal, setting forth each question separately, concisely, and without duplication. He shall forthwith serve a copy thereof upon appellee or his counsel. Ordinarily no point will be considered on appeal which is not set forth in or necessarily suggested by such statement."

Rule 43 was also amended by adding the following paragraph: "In printing the Statement under Rule 22 specific references must be made under each question to the pages in the record where such question arose and where it was considered, discussed and decided. Where the question involves testimony, the charge of the court, or other matter appearing in the record, specific references must be made to the pages in the record where the matter so involved is to be found. Failure to comply with this rule shall be regarded as an abandonment of the question for review."

pared with great care in a conscientious effort to omit nothing that, in counsel's opinion, might have any possible relation to our review. But the Statement of Questions Involved, generally speaking, also defines the limit of our review: Rule 50 of Rules of the Supreme Court; *Hurley's Estate,* 313 Pa. 53, 55, 169 A. 81. The inquiry immediately suggests itself why the points to be argued, printed on 7 pages, could not also be stated within the limits of a single page. The change in our rules was not made or intended to reduce the work of the court and does not have that effect; whether it will reduce the printing costs will of course depend on counsel.

The court in banc erred in dismissing the proceeding. The order is set aside; the record is remitted to the court in banc for consideration of defendant's exceptions and for such disposition as may be required, consistently with this opinion. Costs to abide the result.